IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Kurt Bunk and Daniel Heuser, <br><br> Plaintiffs/Relators, <br><br> v. <br><br> BIRKART GLOBISTICS GmbH & CO., *et al.*, <br><br> Defendants. | No. 1:02cv1168 (AJT/TRJ) |
| UNITED STATES OF AMERICA *ex rel.* Ray Ammons, <br><br> Plaintiff/Relator, <br><br> v. <br><br> THE PASHA GROUP, *et al.*, <br><br> Defendants. | No. 1:07cv1198 (AJT/TRJ) |

## MEMORANDUM OPINION

This matter is before the Court on the United States' Motion for Partial Summary Judgment on Damages and Civil Penalties Against Gosselin Worldwide Moving N.V. and Marc Smet (Doc. No. 700). A hearing was held on Friday, October 29, 2010, following which the Court took the matter under advisement. Upon consideration of the motion, the opposition thereto and the arguments of counsel, the Court concludes that there are genuine issue of material fact that preclude the entry of summary judgment as to both damages and civil penalties and the Motion will be DENIED. The Court further concludes, however, that certain issues can be

decided at this time as a matter of law and the Court issues this Memorandum Opinion with respect to those issues in order to govern the resolution of certain remaining issues in the case.

## I.  BACKGROUND

In 2003, a federal grand jury sitting in the Eastern District of Virginia returned a two count criminal indictment against defendant Gosselin Worldwide Moving, N.V. ("Gosselin ") and defendant Marc Smet ("Smet" and collectively with Gosselin, the "Defendants").[1] On February 5, 2004, Smet, acting in both his individual capacity and on behalf of Gosselin, entered into a Plea Agreement and a written Statement of Facts.[2] Under the terms of the Plea Agreement, the government agreed to file a two-count criminal information as to Gosselin only; and Gosselin agreed to plead guilty to the criminal information subject to the Court's rulings on certain immunity defenses asserted by Gosselin under the The Shipping Act of 1984, 46 U.S.C A. § 40307.[3] In return, the government agreed to dismiss the indictment against Gosselin and Smet. On February 18, 2004, pursuant to the Plea Agreement, the government filed a two count criminal information against Gosselin alleging conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and conspiracy to restrain trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. On April 12, 2006, following a resolution of Gosselin's immunity defense under The Shipping Act, Gosselin pled guilty to both counts of the criminal

---

[1] *United States v. Gosselin World Wide Moving et al.*, No. 1:03-cr-551 (E.D. Va. filed Nov. 13, 2003).

[2] *See* Gosselin Worldwide Moving, N.V. and Marc Smet's Brief in Opposition to the Government's Motion for Partial Summary Judgment on Damages and Civil Penalties ("Opposition"), Exhibit A, Statement of Facts, and Exhibit C, Plea Agreement (Doc. No. 718) (hereinafter "Statement of Facts" and "Plea Agreement").

[3] Under the terms of the Plea Agreement, Gosselin was permitted to move to dismiss both counts of the criminal information under The Shipping Act's immunity provisions, which Gosselin asserted as a defense based on the decision in *United States v. Tucor Intern. Inc.*, 238 F.3d 1171 (9th Cir. 2001).

information and was sentenced to pay a fine of $6 million, together with restitution in the amount of $865,000.[4] As set forth in the Statement of Facts and the Plea Agreement, these convictions were based on a bid-rigging scheme among European and American companies in connection with the government's International Through Government Bill of Lading ("ITGBL") program pertaining to the transportation from Germany to the United States of household goods owned by U.S. military and civilian personnel. Gosselin admitted, through Smet, that it "did unlawfully, willfully, and knowingly combine, conspire, and agree to defraud the United States by increasing the rates paid by DOD for the transportation of military goods during the IS-02 cycle to levels higher than would have prevailed in the absence of the conspiracy." Statement of Facts at 12. Gosselin agreed that "[Gosselin] will plead guilty because [Gosselin] is in fact guilty of the charged offenses." Plea Agreement at 4.

On July 18, 2008, the United States filed a Complaint in Intervention in this case (Doc. No. 110) ("the Complaint"). The Complaint alleges, among other things, that Gosselin, Smet, and over a dozen other named defendants and nonparties conspired to submit false and inflated claims to the United States through the ITGBL program. The Complaint alleges, as to all defendants, violations of (1) the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"); (2) common law fraud; (3) common law conspiracy to defraud the United States; and (4) unjust enrichment.

---

[4] In response to Gosselin's motion to dismiss the two counts of the criminal information based on a claim of immunity under The Shipping Act, the Court granted its motion as to Count I, alleging a violation of the Sherman Antitrust Act, and denied the motion as to Count II, alleging a violation of 18 U.S.C. § 371, conspiracy to defraud the United States. On appeal, the Fourth Circuit rejected Gosselin's claim of immunity under The Shipping Act, reinstated the antitrust count and affirmed this Court's refusal to dismiss the conspiracy to defraud count. *See United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502 (4th Cir. 2005). Gosselin's sentencing was postponed until after the resolution of the appeal, and on April 12, 2006, immediately before sentencing, Gosselin entered guilty pleas to both counts in the criminal information.

3

Based on Gosselin's guilty plea and the admissions in the criminal proceedings, the Court, by order dated January 25, 2010 (Doc. No. 557), entered summary judgment in favor of the United States and against Gosselin and Smet as to liability for conspiracy under the FCA in violation of 31 U.S.C. § 3729(a)(3), as alleged in Count I, and also as to liability for common law conspiracy to defraud the United States as alleged in Count III of the Complaint. In doing so, the Court rejected Gosselin's and Smet's argument that, notwithstanding the criminal proceedings, they could contest liability under the FCA because to establish such liability the government must prove certain elements of liability in addition to those essential to proving the criminal charges to which Gosselin pled guilty.

Based on the same criminal proceedings and theories of estoppel asserted to obtain judgment as to liability, the government now moves for summary judgment against Gosselin and Smet on the issues of (1) damages under the FCA and for common law conspiracy; and (2) civil penalties under the FCA.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## III. ANALYSIS

The Government argues that by applying theories of estoppel based on the prior criminal proceedings, the Court should grant summary judgment in favor of the government on (1) damages under the FCA and for common law conspiracy; and (2) civil penalties under the FCA. With respect to damages, the government seeks judgment in the amount of at least $865,000 as to its common law conspiracy claim and treble that amount, or $2,595,000, as to its FCA conspiracy claim. The government's claim for FCA damages is based on the restitution amount of $865,000 entered against Gosselin in the criminal case, trebled pursuant to 31 U.S.C. § 3729(a). With respect to civil penalties, the government seeks a judgment for $6,413,000. The government claims this amount by multiplying $11,000, the maximum amount assessable as a civil penalty under the FCA for each false claim, by 583, the number of submitted and paid

5

invoices it claims resulted in the loss reflected in the Court's restitution order of $865,000 entered in the criminal proceedings.[5]

Similar to their previous position on liability, the Defendants object to the entry of summary judgment as to damages or civil penalties on the ground that all of the elements for an estoppel based on the criminal proceedings do not exist. In this regard, Defendants claim that the amount of the restitution order was never agreed to, that they never had an adequate opportunity to verify the amount of the government's loss and that the restitution amount is, in fact, inflated and not supported by the evidence they have since obtained for the first time in this case, including the very invoices upon which the government now relies for the purposes of obtaining civil penalties. In short, Defendants claim that rather than $865,000 or $1 million in actual losses, the government's loss amounts to no more than $128,008.68. *See* Opposition, Exhibit D at 3, Declaration of Mark Smet Pursuant to 28 U.S.C. § 1746. In addition, Defendants claim that they are entitled to reduce the amount of any damages owed by the amount that the government has already received for its losses through restitution in the criminal proceedings and settlements with other companies and/or individuals whom the government claimed were part of the same conspiracy with the Defendants.[6] With respect to civil penalties, the Defendants also contend that (1) any estoppel applicable to damages would in no event extend to civil penalties; (2) in no

---

[5] In its Reply brief, the government reduced the number of false invoices submitted to 577. *See* Reply Brief in Further Support of United States' Motion for Partial Summary Judgment on Damages and Civil Penalties Against Gosselin Worldwide Moving N.V. and Marc Smet at 10, n. 2 (Doc. No. 723) (hereinafter "Reply"). The government also, for the first time, asserted that after it reviewed the transcripts from the criminal case, it "now appear[ed] that it would be more appropriate for the Court to find $1 million is the appropriate amount to award as FCA damages, which should be trebled to $3 million." Reply at 9, n. 9. The government has not identified a separate number of invoices that would support its revised claim for damages based on the loss amount of $1 million.

[6] In its Reply brief, the government conceded that damages under the FCA and for common law conspiracy is offset by the $865,000 the United States recovered from Gosselin and the Pasha Group ("Pasha"), a co-conspirator, as restitution in the criminal action. *See* Reply at 20.

event is more than one civil penalty assessable against them for an FCA conspiracy; and (3) there are a wide range of unresolved fact issues that need to be decided before the Court can properly exercise its discretion in assessing civil penalties.

The doctrines of collateral estoppel and judicial estoppel apply to this action based on the prior, now completed criminal proceedings. Under the doctrine of collateral estoppel, Defendants may not relitigate in this case an issue that was "critical and necessary" to the criminal proceedings. *See United States v. Wight*, 839 F.2d 193, 195-97 (4th Cir. 1987). More specifically, collateral estoppel applies where: (1) the issue sought to be precluded is identical to the one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) that determination was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party to be estopped had a full and fair opportunity to litigate the issue in the prior proceeding. *Sedlack v. Brasell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998); *see also* 18 U.S.C. § 3664(l) (a "conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding"); 31 U.S.C. § 3731(e) ("Notwithstanding any other provision of law... a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict or upon a plea of guilty or *nolo contendere*, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730).

Under the doctrine of judicial estoppel, Defendants are precluded from litigating certain issues if it would require taking positions inconsistent with positions previously taken in judicial proceedings. *See John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir.

7

1995); *see also Lowery v. Stoval*, 92 F.3d 219, 224 (4th Cir. 1996) (citing with approval the following definition: "Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with a position sworn to and benefited from in an earlier proceeding"). To assert judicial estoppel: (1) the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the prior inconsistent position must have been accepted by the court; and (3) the party sought to be estopped must have intentionally misled the court to gain unfair advantage. *Lowery*, 92 F.3d at 224.

### A. Damages

The Court concludes that all of the elements of judicial and collateral estoppel are satisfied in this case, and the Defendants are precluded from contesting the fact or amount of the government's loss for the purpose of calculating damages under the FCA and common law conspiracy claims on which the Court has previously entered liability.

In the criminal proceedings, Gosselin expressly agreed that "DOD paid approximately $1 million more that [sic] it would have paid absent defendant PASHA's [a co-conspirator] and defendant GOSSELIN's N.V.'s activities." Statement of Facts at 10. Based on the Statement of Facts, sworn to in connection with the entry of Gosselin's guilty plea, the Court found an adequate basis for the pleas, and therefore, accepted the facts agreed to by Gosselin and Smet. Furthermore, in the Plea Agreement, the Defendants agreed to "the entry of a Restitution Order for the full amount of the victim's losses under Title 18, United States Code, Sections 3556 and 3663A(c)(1)(A)(ii)." They further agreed that as of the time they entered into the Plea Agreement, "the United States is aware that the Department of Defense has suffered... $865,000 for losses... for the summer cycle of 2002 [IS02] for Code 4 ITGBL shipments from Germany to

the United States." Plea Agreement at 9. On April 12, 2006, the Court sentenced Gosselin on his guilty pleas; and in accordance with 18 U.S.C.§§ 3556 and 3663A, the Court, as a mandatory part of its sentence, ordered Gosselin to pay restitution to the United States in the amount of $865,000, together with a fine in the amount of $6 million.

As these defendants effectively acknowledged in the Plea Agreement, an order of restitution was a mandatory part of any sentence imposed in connection with Gosselin's convictions. See 18 U.S.C. §§ 3556 ("The court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with section 3663A"); and 3663A(a)(1) ("Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to…any other penalty authorized by law, that the defendant make restitution to the victim of the offense"). Further, the Court was obligated to order restitution "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Any dispute as to the proper amount of restitution is to be resolved by the court by the preponderance of the evidence, 18 U.S.C. § 3664(e); and "[t]he court may refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master for proposed findings of fact and recommendations as to disposition, subject to de novo determination of the issue by the court." 18 U.S.C. § 3664(d)(6).

Because the Court was obligated as part of the criminal proceedings to impose a restitution order in the full amount of the government's losses attributable to the charged conspiracy, the Court was required to determine the full amount of the government's losses. For these reasons, the full amount of the government's losses was "critical and necessary" to the

restitution order and the criminal proceedings. Moreover, the amount of the loss suffered by the government for the purposes of the mandatory restitution order in the criminal proceedings is, by definition, precisely the same amount as the loss suffered by the government for the purposes of awarding damages in this case for the conspiracy as to which the Court has previously entered liability.

Finally, this mandatory restitution order constitutes a final and binding adjudication of both the fact of loss to the United States and also the full amount of the loss attributable to the charged conspiracy. Although Gosselin raised issues at the sentencing hearing about the amount of restitution, it never presented any evidence or requested an evidentiary hearing on the restitution amount, even though the Court stated that it was prepared to schedule such a hearing, as requested, on the issue of apportionment of the restitution amount with Pasha, who also pled guilty to the charged conspiracy. Nor did it request a referral to the Magistrate Judge on the restitution amount. In any event, by the conclusion of the hearing, the Court determined based on the Plea Agreement that the appropriate restitution amount was $865,000, and without objection from Gosselin, a restitution order in that amount was entered against Gosselin. Although Gosselin subsequently appealed the fine imposed by the district court, it did not challenge on appeal the restitution order. *Gosselin World Wide*, 411 F.3d at 516. For these reasons, the Court finds not only that the restitution order constitutes a final and valid judgment concerning the loss amount, but also that Gosselin and Smet had a full and fair opportunity to litigate over the amount of the government's loss.[7]

---

[7] Defendants cite and rely heavily on *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322 (4th Cir. 2004). The holding and discussion in *Microsoft* is not inconsistent with the Court's analysis. *Microsoft* analyzed the doctrine of offensive collateral estoppel based on findings of fact issued in earlier civil proceedings, not admissions concerning causation and a restitution order that represents an adjudication of the amount of the government's losses.

Likewise, the Court concludes that the elements of judicial estoppel against Gosselin and Smet are satisfied in this case. By now arguing that the government's actual loss is less than $865,000, Defendants are seeking to adopt a position that is inconsistent with the stance they ultimately took in the criminal proceeding. The Court clearly accepted what it viewed as the Defendants' agreement and admissions concerning the loss amount of $865,000 and Defendants never preserved an objection or contrary position. Finally, Defendants benefited from the earlier position they had taken. By allowing, without objection, the restitution order to be entered for $865,000, they limited their financial exposure, the indictment was dismissed and Smet avoided a criminal prosecution. To allow Defendants to, in effect, repudiate their earlier positions would result in an attempt to obtain an unfair advantage.[8]

In the end, the Court must conclude with respect to the amount of the government's loss, as it concluded with respect to the issue of liability, that "there are no issues left for Gosselin or Smet to litigate without necessarily collaterally attacking the elements of Gosselin's criminal convictions or these defendants' admissions in the Statement of Facts." (Doc. No. 557). For the above reasons, Gosselin and Smet are foreclosed from contesting the loss suffered by the United States as a result of the conspiracies for which the Court entered liability and the government is entitled to calculate its damages based on the loss amount of $865,000, trebled under the FCA pursuant to 31 U.S.C. § 3729(a).[9]

---

[8] As the Court explained in *Lowery*, a defendant manifests an intent to mislead the court by attempting to free himself from an earlier, inconsistent position. In *Lowery*, the court found a defendant "intentionally misled" the court where in a criminal action, the defendant gained a benefit as part of his pleading guilty and then sought, in a subsequent civil action, to repudiate his confession "to have it the other way." 92 F.3d at 225.

[9] The Court concludes that the government itself is judicially estopped from claiming that its actual loss is $1 million, rather than $865,000. In the criminal proceedings, the government requested the Court to enter restitution in the amount of $865,000 based on its position that

11

### i. As to set-offs

Although the Court concludes that principles of estoppel preclude Defendants from contesting the amount of the government's damages, the Court also concludes that Defendants are not precluded from claiming set-offs against those damages based on amounts that the government has recovered through settlements with other alleged co-conspirators in the bid-rigging scheme.

The United States has settled with multiple parties in this action. Although the complete details of those settlements have not been presented to the Court,[10] the government nevertheless claims that Gosselin and Smet are not entitled to any sets-offs, and the government would not recover amounts exceeding its damages, because the funds obtained through the settlements are not for "common damages." In this regard, the government claims that the Complaint "alleges a bid-rigging conspiracy much broader than the one at issue in the criminal complaint."[11] For this reason, the government views the funds it received pursuant to its multiple global settlements of

---

Gosselin, through Smet, had agreed to such an amount in the Plea Agreement. The Court accepted that position and ordered Gosselin to pay restitution in that amount. The government received the restitution amount ordered, and the government would receive an unfair advantage if it were permitted to seek, in this case, a larger amount as its actual loss for the charged conspiracy. Moreover, Gosselin's position on appeal with respect to the maximum amount of a permissible fine, based on a loss amount of $1 million, was contested by the government and rejected by the Fourth Circuit, as it was by this Court at Gosselin's sentencing.

[10] Based on the limited information provided to the Court in the briefings and at the hearing on October 29, 2010, it appears that the settlement amounts already obtained exceed the total amount of the judgment for damages that would be entered, without any set–offs, based on the restitution amount obtained in the criminal proceedings.

[11] The government claims that the conspiracy alleged in the criminal proceedings affected only 12 transportation channels, whereas the conspiracy alleged in the Complaint alleges that everyone of the 52 channels from Germany to the United States and the 52 channels from the United States to Germany were tainted by the defendants' bid-rigging conspiracy that extended from the IS-01 rate cycle to at least the IW-02 cycle, resulting in a total of 416 affected channels during a two-year conspiracy period with "estimated single damages of $28 million" and that the settling defendants faced "an FCA judgment [...] well in excess of $100 million." Reply at 18.

those claims as amounts that "compensated the United States for losses resulting from conduct far more extensive than what was at issue in the criminal case," whereas the damages the government seeks against Gosselin and Smet in its motion for partial summary judgment relate to only "a narrow portion of the overall conspiracy." Reply at 18-19.

While the parties dispute the extent to which these settlements in fact compensate the government for the same claims and damages as those that relate to the conspiracy claims on which the Court has entered liability as against Gosselin and Smet, the parties do not dispute that the settled claims are coextensive with the claims asserted in this action against Gosselin and Smet, nor is there any dispute that the alleged co-conspirators are jointly and severally liable with Gosselin and Smet. Reply at 19 ("Because the United States alleged that each settling defendant was part of the overall conspiracy, each would be liable for the acts of every other co-conspirator. Therefore, every settling defendant faced potential liability for the total amount of damages and civil penalties because defendants that conspire to submit false claims are jointly and severally liable for each false claim submitted pursuant to the conspiracy, regardless of whether they personally submitted the false claims."). Moreover, the damages that the government seeks, while trebled, are nevertheless, compensatory damages for its losses; and the government, as every other civil litigant, is entitled to recover only once for its cognizable losses. *See United States v. Lorenzetti*, 467 U.S. 167, 173 (1984); *McGready v. Blue Shield of Virginia*, 649 F.2d 228, 231-32 (4th Cir. 1981). It is therefore clear that the government's settlements with alleged co-conspirators entitle a non-settling co-conspirator defendant to a credit against any subsequent judgment as long as the settlement amount and judgment damages represent common damages. *See United States v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983); *United States v. Zan Machine Co. Inc.*, 803 F. Supp. 620, 623 (E.D.N.Y. 1992).

Based on the record currently before the Court, the Court is not in a position to determine whether, or to what extent, damages otherwise payable by Gosselin and Smet will need to be reduced based on the government's settlements. *See Bornstein*, 423 U.S. at 316-17 (stating a rule that multiplies damages before applying any set offs "best comports...with the language and purpose of the [False Claims]Act.") There appears to be, however, very substantial legal and factual issues that will need to be addressed before a final judgment for damages can be entered against Gosselin and Smet.[12]  For these reasons, summary judgment on the issues of damages cannot be entered at this time.

## B. Civil Penalties

With respect to civil penalties, Gosselin and Smet contend that as a matter of law, only one civil penalty of between $5,500 and 11,000 may be assessed with respect to the FCA conspiracy claim on which liability has been found. Moreover, Defendants contend that in the event the Court disagrees with their position that only one civil penalty is assessable, and, regardless of whether estoppel precludes the relitigation of damages, estoppel does not apply to issues of civil penalties and there remains open a wide variety of factual issues that must be resolved before the Court can exercise its discretion in determining the amount it should assess as a civil penalty. Defendants identify these open issues to include, among others, the number of invoices that were in fact "false," the government's level of knowledge as to the alleged bid-

---

[12] The government relies heavily on *United States v. All Star Industries*, 962 F.2d 465 (5th Cir. 1992), for its position that the Court should reject at this point any claim of a set-off. In *All Star*, the Court refused to reduce a defendant's restitution obligation in a criminal case because of that defendant's payments to settle civil claims. The defendant claimed that the civil settlement payments were made "to settle civil claims involving the same conduct and parties," but the Court found that the settled civil case involved "a significantly broader number of victims for a significantly broader number of projects." Significantly, the Court observed that the defendant "has offered no accounting to show how the victims of its criminal conspiracy received restitution through that civil conspiracy settlement." *Id.* at 477.

14

rigging before it decided to accept certain rates that it claims were tainted, the extent to which the government could have mitigated its alleged damages, and the level of these defendants' culpability, particularly in light of what they, in good faith, believed were applicable immunities from United States antitrust laws, as interpreted by the Ninth Circuit in *Tucor*, 238 F.3d at 1171.

The Court first concludes that Gosselin and Smet may be assessed more than one civil penalty for their conspiracy in violation of 31 U.S.C. § 3729(a)(3). The number of civil penalties that are assessable for conspiracy under the FCA is governed by the same standard as all other violations of the FCA, and there is nothing in the FCA that necessarily limits the number of civil penalties for a conspiracy.[13] On the other hand, neither Gosselin nor Smet personally filed any invoices with the government. Freight forwarders submitted all of the invoices, and the Court cannot at this time determine that Gosselin and Smet must necessarily be assessed a civil penalty for every false claim that the freight forwarders submitted. These overall conclusions are further dictated by the holding and approach adopted in *United States v. Bornstein*, 423 U.S. 303, 312-13 (1976) (finding subcontractor who provided only three shipments of falsely marked electron tubes to the contractor who in turn sent thirty five invoices to the Government for the tubes is liable for three acts, not thirty five). In *Bornstein*, the Supreme Court explained that the FCA "imposes liability only for the commission of acts which cause false claims to be presented" and that the FCA "requires...that the focus in each case be upon the specific conduct of the person from whom the government seeks to collect statutory forfeitures." *Id.* at 313. *Bornstein* undermines not only Defendants' position that they should necessarily be assessed only one civil

---

[13] Under FCA, 31 U.S.C. § 3729 (2000), "[a]ny person who... conspires to defraud the Government by getting a false or fraudulent claim allowed or paid... is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person." In 1999, the Department of Justice issued a Final Rule increasing these penalty amount to not less than $5,500 and not more than $11,000. *See* 28 C.F.R. § 85.3(9) (2000).

penalty for a single FCA conspiracy claim but also the government's position that a civil penalty should necessarily be assessed for every false invoice submitted by the freight forwarders.

Second, the Court concludes that Defendants are not foreclosed by the criminal proceedings, as the government claims, from contesting the number of false claims for which they will be assessed a civil penalty or the amount to be assessed for each such false claim. Nothing in Gosselin's Statement of Facts, the Plea Agreement, the guilty plea colloquy or sentencing hearing addressed or decided anything pertaining to civil penalties. The loss determined in the criminal proceedings for the purpose of ordering restitution constituted the total actual loss to the government as a result of the charged conspiracy. That amount was presented to the Court without any reference to specific invoices and without any consideration of what role Gosselin had played in the conspiracy or whether or to what extent its conduct "caused" the freight forwarders to file false claims. For the purposes of determining restitution, those considerations were irrelevant. Whether these particular 583 invoices, in fact, substantiate 583 "false claims" remains subject to proof and adjudication.

Nor can the Court enter summary judgment as to the amount of each civil penalty to be assessed against Defendants. In determining the amount of civil penalties to award, the Court must be guided "by the totality of the circumstances." *United States ex. Rel. Miller v. Bill Harbert Int'l Constr. Inc.* 501 F. Supp. 2d 51, 56 (D.D.C. 2007). Some of the factors a court may take into account include: (1) the egregiousness of the defendant's conduct; (2) the scienter and general culpability as to each false claim; (3) the need for deterrence; (4) the proportionality between the Government's damages and the civil penalty; (5) defendant's ability to pay; (6) whether the Govenrment shares in some of the blame for its damages; and (7) general, undefined considerations of fairness. *See e.g., United States v. Peters*, 927 F. Supp. 363, 369 (D. Neb.

1996), *judgment aff'd*, 110 F.3d 616 (8th Cir. 1997). Although the United States contends that Defendants' misconduct was extensive and there is a need to deter and protect the United States, there are numerous other factors the Court must consider before it can determine the amount to be assessed; and the record before the Court is inadequate for that purpose.

## IV.  CONCLUSION

For the above reasons, the Court concludes as a matter of law that (1) Gosselin and Smet are estopped from contesting the amount of the government's total loss for the purposes of calculating damages attributable to the conspiracies as to which the Court has entered liability, that loss amount being $865,000;[14] (2) the Court must determine whether and to what extent any damages based on that loss amount are to be reduced because of settlements obtained by the government with alleged co-conspirators; (3) more than one civil penalty may be assessed against Gosselin and Smet based on a conspiracy in violation of 18 U.S.C.§ 3729(a)(3); (4) Gosselin and Smet are not estopped from contesting the number or amount of civil penalties to be assessed; and (5) the record before the Court is inadequate for this Court to determine on summary judgment the number or amount of civil penalties to be assessed against Gosselin and Smet.

An appropriate Order will follow.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 10, 2010

---

[14] Because Gosselin and Smet are estopped from further contesting the government's actual loss amount, issues pertaining to the government's knowledge of the bid-rigging scheme at the time it published IS-02 rate schedules or paid invoices for the IS-02 cycle rate are now irrelevant as to damages. However, the extent of the government's knowledge and its conduct in light of what it knew remains relevant considerations to the Court in considering an appropriate civil penalty.