IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Kurt Bunk and Daniel Heuser, <br><br> Plaintiffs/Relators, <br><br> v. <br><br> BIRKART GLOBISTICS GmbH & CO., *et al.*, <br><br> Defendants. | No. 1:02-cv-1168 (AJT/TRJ) |
| UNITED STATES OF AMERICA *ex rel.* Ray Ammons, <br><br> Plaintiff/Relator, <br><br> v. <br><br> THE PASHA GROUP, *et al.*, <br><br> Defendants. | No. 1:07-cv-1198 (AJT/TRJ) |

## **MEMORANDUM OPINION**

This case was tried beginning on July 18, 2011. On July 28, 2011, following the close of the United States' case in chief, the Court dismissed the ITGBL claims other than those that related to the Cartwright and Covan Channels, based on the antitrust immunity provision of the Shipping Act of 1984, 46 U.S.C. §§ 40301-40307. *See* Doc. Nos. 1034 (trial transcript) & 1072 (memorandum opinion). On December 19, 2013, the Fourth Circuit reversed certain of this Court's rulings made during that trial. As relevant to the matters currently before the Court, the Fourth Circuit held that the Shipping Act does not immunize any part of the defendants' conduct that the United States relies upon in connection with its ITGBL claims under the False Claims

Act. The Fourth Circuit accordingly vacated this Court's order based on its contrary ruling and remanded the case for further proceedings.

By Order dated April 7, 2014 [Doc. No. 1189], this Court scheduled a trial on any revived ITGBL claims. Nevertheless, by Order dated May 7, 2014 [Doc. No. 1200], the Court ruled that it would consider those of the defendants' grounds for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 that were previously asserted at the close of the United States' case in chief but not ruled upon in light of the Court's now-reversed decision based on the Shipping Act. The Court will now address those previously undecided grounds for judgment as a matter of law as well as the United States' position that the Fourth Circuit's mandate requires a retrial as to its bid-rigging claims based on the Covan Channels as well as the ITGBL claims that were not submitted to the jury.[1]

For the reasons stated below, the Court concludes that: (1) a re-trial of the United States' bid-rigging claims pertaining to the Covan Channels (the "Covan Channels claims") is not warranted; (2) the defendants' objection to the testimony of expert witness Robert Marshall based on the timeliness of the United States' disclosures pertaining to that testimony is overruled; (3) the defendants' objections to the United States' exhibits concerning the number of false claims submitted in connection with the ITGBL claims are sustained and those exhibits (Gov. Ex. 168, 169, and 171) are stricken; and (4) the defendants' motion for judgment as a matter of law as to liability and damages is DENIED without prejudice in any respect to its

---

[1] The Court has described the facts of this case in detail in its previous memorandum opinions and hereby incorporates those descriptions by reference. *See* Doc. Nos. 1072 & 1104.

renewal at the re-trial of this case, following the United States' case in chief, which motion will be based on the evidence presented at that trial and the grounds asserted at that time.[2]

## I. The Covan Channels Claims

The United States contends that the Fourth Circuit's mandate requires a retrial on the Covan Channels claims. The Court finds this position without merit. The Covan Channels claims were based on the defendants' conduct directed at causing the American freight forwarding company Covan International to cancel certain prime rates it had set for fourteen ITGBL channels in ISO1, with the result that higher rates were set for those channels. That bid-rigging conduct was separate and apart from the conduct the Court found immune under the Shipping Act, and the Covan Channels claims were in fact submitted to the jury, which returned a verdict in Defendants' favor. On appeal, the United States did not challenge that verdict except on one ground: that this Court erred in permitting the jury to consider the Ninth Circuit's opinion in *United States v. Tucor Int'l, Inc.*, 189 F.3d 834 (9th Cir. 1999), which the Court admitted on the issue of whether the defendants acted with the requisite knowledge under the False Claims Act. *See* Appellate Brief at 60; *see also id.* at 45 n.10. The Fourth Circuit did not address that argument, however; its opinion mentions *Tucor* only once, in a footnote, and indicates only that that case is distinguishable from this one. *See* Slip Op. at 46 n.16.

Nevertheless, the United States contends that the Fourth Circuit's opinion pertaining to antitrust immunity under the Shipping Act requires a retrial of the Covan Channels claims. In

---

[2] On June 23, 2014, the defendants filed a Notice referring to their "pending motion to stay" the proceedings in this case [Doc. No. 1214]. This appears to be a reference to an oral statement made by the defendants at the May 16, 2014 status conference, as the defendants have not filed a motion to stay that this Court has not already denied. To the extent the defendants have moved for a stay, the Court concludes that such a stay is not warranted at this time and denies any such motion, without prejudice to its renewal should there be a material change in the posture of the case.

support of that position, the United States points to the following portion of the Fourth Circuit's opinion:

> The court . . . incorrectly ruled as a matter of law in Gosselin's favor on the company's price-fixing conduct affecting the remaining German channels, including the Covan Channels. Gosselin could not have successfully asserted Shipping Act immunity anew to defeat the preclusive effect of our prior judgment, and it should not have been suffered to prevail on the same argument with respect to the nearly identical circumstances presented by the Covan Channels, or to the materially similar circumstances common to all the German channels. The jury should have been allowed to consider the government's entire case, but, inasmuch as it was not so permitted, the verdict in favor of Gosselin must be vacated as infirm.

Sip Op. at 47.

The United States reads this paragraph too broadly and out of context. This Court ruled that the defendants' bid-rigging conduct in connection with the Covan Channels claims was *not* immune, the jury was so instructed, and the United States did not challenge that or any other jury instructions on appeal. In short, this Court submitted the bid-rigging claim based on the Covan Channels to the jury, which found in the defendants' favor on that claim. For these reasons, the Fourth Circuit's cited passage cannot reasonably be read to support the view that the Fourth Circuit reversed the jury verdict in favor of the defendants with respect to the Covan Channels bid-rigging claims, particularly since this Court ruled in the *United States'* favor on the immunity issue as it pertained to the Covan Channels prime bid cancellations. Rather, the only reasonable reading of the cited passage from the Fourth Circuit's opinion is that, upon re-trial of the ITGBL claims based on the landed rate agreement (the "Sonthofen Agreement"), which this Court concluded was immune, the jury should consider the Covan Channels along with the other non-Cartwright channels.

The United States argues that that the jury's verdict in Gosselin's favor must be vacated and the Covan Channels bid-rigging claim retried because the jury was likely improperly

influenced by the *Tucor* opinion's admission into evidence and the Court's instruction that certain conduct (but not the bid-rigging/prime-rate-cancellation conduct involved with the Covan Channels) was immune. The United States did not claim error based on those instructions on appeal, and the Fourth Circuit did not address that issue or vacate or otherwise reverse the jury's verdict in favor of the defendants with respect to the Covan Channels. Moreover, it said nothing about the propriety of admitting the *Tucor* opinion or other evidence pertaining to Defendants' reliance on that opinion. For all these reasons, the Court concludes that no further proceedings are necessary regarding the Covan Channels claims.

## II. Expert Testimony Pertaining to Damages

Prior to trial, the defendants filed a Rule 37 motion to exclude the testimony of the United States' expert, Dr. Robert Marshall, on damages [Doc. No. 852]. The Court deferred ruling on the motion, except with regard to Dr. Marshall's testimony on damages attributable to the Cartwright Channels and the "lingering effects" of the alleged conspiracy in the 2003 and 2004 rate cycles [Doc. No. 961]. The defendants then renewed their Rule 37 objections in connection with their Rule 50 motion for judgment as a matter of law. In ruling on Defendant's Rule 50 motion, the Court excluded Dr. Marshall's testimony on damages based on inflated rates caused by the Sonthofen Agreement on the ground that the underlying conduct was immune under the Shipping Act. *See* Trial Tr. at 1050-51. In light of the Fourth Circuit's holding in this case, the Court cannot exclude Dr. Marshall's testimony on that ground, and the Court will consider Defendants' Rule 37 objections.

The defendants contend that the United States failed to comply with its obligation under Fed. R. Civ. P. 26(a) to provide the defendants with "a computation of each category of damages claimed." Specifically, the defendants contend that the United States' initial disclosures and

answers to the defendants' discovery requests gave no indication of the United States' intention to rely on the so-called "inflated prime rates" theory of damages, and that the defendants did not learn of that theory until they received Dr. Marshall's expert report on February 15, 2011. The defendants therefore seek exclusion of Dr. Marshall's testimony pursuant to Fed. R. Civ. P. 37(c), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[3]

The Court concludes that the United States adequately disclosed its intention to rely on inflated prime rates as a source of damages. First, the United States' complaint in intervention [Doc. No. 110] makes clear that the local agents' agreement to work exclusively under landed rates was part of the alleged conspiracy. In particular, the complaint alleges that the defendants caused the carriers to "submit thousands of artificially inflated invoices to SDDC for payment of moving services in *all international traffic channels between the United States and Germany*, including the traffic channels that were the subject of cancelled rates," and that the defendants' activities increased the rates paid by the DOD "beginning at least during the IS-01 cycle and continued at least through the IS-02 cycle." *See* Compl. ¶¶ 82-83 (emphasis added); *see also id.* ¶¶ 102-104 ("The object of the conspiracy was to increase the rates paid by DOD/SDDC for the transportation of military household goods between Germany and the United States beginning at least as early as November 2000 to levels higher than would have prevailed in the absence of the

---

[3] The defendants have expanded the scope of relief they now seek based on their objections to the timeliness of the United States' disclosures from an exclusion of Dr. Marshall's testimony to a preclusion of claims other than the Covan and Cartwright Channel claims. Given the Court's disposition of the defendants' timeliness objections, the Court does not need to address the scope of appropriate relief.

6

conspiracy, and to enforce those unlawfully inflated rates by conspiring to punish, through threatened boycotts and economic sanctions, those entities that failed or refused to abide or otherwise comply with their illegal schemes.").

Further, while the United States' Initial Disclosures, filed October 9, 2009, indicate that damages would be the subject of expert testimony and that the categories of damages would be disclosed and quantified in the United States' expert disclosures, those initial disclosures also indicated that damages were preliminarily estimated to be $28 million, "which is the total amount of money that the United States was caused to pay for the transportation of all Code 4 ITGBL moves between all channels in the United States and Germany for the 2001 and 2002 rate cycles as a result of the defendants' conspiracy to rig bids, fix prices, and allocate the market for transportation services." This statement makes clear that the United States intended to claim damages for conduct affecting all of the German channels in 2001 and 2002, and not just the bid-rigging conduct focusing on the Covan and Cartwright Channels.

For these reasons, the Court overrules the defendants' objection to Dr. Marshall's testimony and denies the defendants' motion for judgment as a matter of law with regard to that testimony.

### III. United States' Exhibits Pertaining to the Number of False Claims

In its Rule 50 motion, the defendants renewed objections they had previously made to Exhibits 168, 169, 171, 172, and 173. The defendants objected to the exhibits on various grounds, including that the United States failed to give them access to the databases from which the exhibits were compiled, as necessary to comply with Federal Rules of Evidence Rule 1006. The defendants also objected to the exhibits on the ground that multiple GBLs could have been included on a single claim, while the exhibits only showed the number of GBLs and therefore

might not accurately represent the number of claims. The Court deferred ruling on the defendants' objections and conditionally admitted the exhibits.

The defendants reasserted their objections at those close of their case, in their renewed motion for judgment as a matter of law [Doc. No. 1075]. The Court ruled that Exhibit 169, which lists all of the paid GBLs for IS02 and IW02, and Exhibit 173, which is derived from Exhibit 169 and summarizes the number of paid moves at the second low rate for the Cartwright Channels, were inadmissible because of the United States' failure to comply with Fed. R. Evid. 1006 [Doc. No. 1104]. Because of the Court's earlier ruling on immunity and the jury's verdict in the defendants' favor on the Covan Channels claims, the Court did not have the occasion to revisit the admissibility of Exhibit 168, which lists all of the paid GBLs for IS01 and IW01, or Exhibit 171, which summarizes all of the paid moves listed in Exhibits 168 and 169. Nevertheless, the United States did not appeal the Court's ruling that Exhibits 169 and 173 were inadmissible for failure to comply with Fed. R. Evid. 1006, and that ruling is now final and law of the case. Because Exhibit 168 suffers from the same defect as previously-excluded Exhibit 169, and Exhibit 171 is derived from Exhibits 168 and 169, the Court's unappealed ruling compels the same result. For the reasons previously stated with regard to Exhibits 169 and 173, the Court concludes that Exhibits 168 and 171 are inadmissible and are stricken from the United States' Exhibits.

### IV. Liability

The United States has asserted claims against the defendants under the False Claims Act, 31 U.S.C. §§ 3729(a)(1), (2), and (3). In order to establish liability under Section 3729(a)(1), the United States must show that: (1) the defendants presented a claim, or caused a claim to be presented, to the government; (2) the claim was false or fraudulent; (3) the defendants knew the

claim was false or fraudulent; (4) the claim was material; and (5) the claim caused the government to pay out money or to forfeit moneys due. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir 2008). In order to establish liability under section (a)(2), the United States must show that: "(1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 444 F. Supp. 2d 678, 685 (E.D. Va. 2006), *overruled on other grounds*. In order to establish liability under section (a)(3), the United States must show: "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the government and (2) at least one act performed in furtherance of that agreement." *United States ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010).

The United States' legal claims against the defendants, who did not themselves submit any claims for payment to the United States government, present complex legal issues concerning what evidence is necessary to prove, under the circumstances of this case, that a "false claim" was filed, that the defendants "caused" the filing of a "false claim," and that the United States was damaged as a result of a "false claim." The United States did present at the original trial some evidence in support of its various legal theories, some recognized in the case law, some not. Likewise, the defendants have advanced various theories of liability that allow for certain defenses, some recognized in the case law, some not. Had the Court reached the sufficiency of the evidence as to liability and damages on the ITGBL claims other than those relating to the Covan and Cartwright Channels, it would have reserved on those issues and allowed the trial to proceed with respect to those issues.

At this point, the Court concludes that the best course is to proceed, as best it can, consistent with how it would have proceeded at the original trial following the close of the United States' case had the ITGBL claims not been dismissed based on the Court's now-reversed rulings under the Shipping Act. Accordingly, the Court will permit the United States to proceed with a new trial as to these ITGBL claims and will then, in response to a renewed Rule 50 motion, assess the sufficiency of the evidence based on the evidence presented at that trial. For these reasons, the Court will deny without prejudice the defendants' previously asserted Rule 50 motion on the issues of liability and damages. The Court intends this ruling to have no limiting effect on the defendants' ability to challenge the sufficiency of the United States' evidence at the new trial, the grounds that may be asserted in support of the renewed Rule 50 motion, or the Court's ability to consider and rule on any issues raised.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
June 30, 2014