IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel*. KURT BUNK & RAY AMMONS, | ) ) ) ) | |
| Plaintiffs/Relators, | ) ) | |
| v. | ) ) | Civil Nos. 1:02-cv-1168-AJT-MSN<br>1:07-cv-1198-AJT-MSN |
| GOSSELIN WORLDWIDE MOVING,<br>N.V., GOSSELIN GROUP, N.V., MARC<br>SMET,et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on the Motion to Quash Writ of Continuing Non-Wage Garnishment (Dkt. No. 1387) of Defendant/Garnishee Government Logistics, N.V. (GovLog). Having reviewed the Memorandum in Support of the Motion (Dkt. No. 1383), the United States' Opposition to the Motion (Dkt. No. 1391), and GovLog's Reply in Support of the Motion (Dkt. No. 1392), and after considering the arguments advanced by counsel at the hearing held on this matter, the Court will deny the Motion for the reasons that follow.

### I.    Background

In 2002, Plaintiffs/Relators filed suit against Gosselin Worldwide Moving, N.V.—later renamed Gosselin Group, N.V.—under the False Claims Act. Mem. in Supp. of Mot. 2. The lawsuit alleges violations of the Act arising from Gosselin's participation in two military shipping programs: the Direct Procurement Method (DPM) program and the International Through Government Bill of Lading (ITGBL) program. *Id*. The United States intervened as to claims regarding the latter program in 2008. *See* Mem. Op. (Dkt. No. 1364) at 4.

In 2007, Gosselin sold the part of its business responsible for its participation in the ITGBL program to GovLog—a company wholly owned and staffed by former Gosselin employees. *See* Mem. Op. (Dkt. No. 1362) at 4. As a result, Plaintiffs/Relators and the United States asserted claims against GovLog in 2009 seeking to hold GovLog responsible as a successor in liability to Gosselin. Mem. in Supp. of Mot. 2.

In 2014, this Court issued rulings 1) entering final judgment against Plaintiffs/Relators and the United States as to their claims concerning the ITGBL program, 2) holding Gosselin liable for $24 million based on claims related to the DPM program, and 3) holding that GovLog is not a successor in liability subject to the judgment rendered against Gosselin. *See* Mem. Op. (Dkt. No. 1362); Mem. Op. (Dkt. No. 1364). At present, the $24 million judgment against Gosselin stands, while the issue of GovLog's successor liability is the subject of an appeal currently pending before the Fourth Circuit.

On October 8, 2015, the United States sought a Writ of Non-Wage Garnishment (Dkt. No. 1380) as to GovLog. The Writ (Dkt. No. 1381) issued to GovLog as a third-party garnishee, thus requiring GovLog to withhold any assets in its possession owed to or owned by Gosselin in order to satisfy the $24 million judgment. The United States served the Writ on GovLog both by transmitting it to GovLog's counsel pursuant to Federal Rule of Civil Procedure 5 and by mailing a copy of the Writ to GovLog in its native Belgium under Article 10(a) of the Hague Convention.

On November 9, 2015, GovLog filed the instant Motion seeking to quash the Writ. GovLog contends that the Writ was improperly served and that this Court lacks personal jurisdiction over GovLog in its capacity as a third-party garnishee.

## II.     Discussion

### A.  Sufficiency of Service

Garnishment proceedings in federal court are governed by the Fair Debt Collection Procedures Act (FDCPA). *See* 28 U.S.C. § 3001(a). The general provisions of the FDCPA provide that "[a] complaint, notice, writ, or other process required to be served in an action or proceeding under this chapter shall be served in accordance with the Federal Rules of Civil Procedure unless otherwise provided in this chapter." *Id*. § 3004(a). The provisions specifically applicable to service in garnishment proceedings state only that the United States "shall certify to the court that . . . service was made" and that service of a writ must be accompanied by "(A) an instruction explaining the requirement that the garnishee submit a written answer to the writ; and (B) instructions to the judgment debtor for objecting to the answer of the garnishee and for obtaining a hearing on the objections." *Id*. § 3205(c)(3). The law does not otherwise specify the manner in which service of a writ must be effectuated.

The United States, in an effort to comply with the service requirements of the FDCPA, served the Writ upon GovLog twice—once pursuant to Rule 5, and again under the Hague Convention. Because the Court finds the former method of service sufficient, it need not address the latter.

GovLog contends the United States' service of the Writ upon its attorney under Federal Rule of Civil Procedure 5 was improper because while "[t]here is no question that [GovLog's attorney] served, and continues to serve, as GovLog's counsel in the successor liability proceeding and appeal . . . the 'mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service.'" Mem. in Supp. of Mot. 6 (quoting *Davies v. Jobs & Adverts Online*, 94 F. Supp. 2d 719, 722 (E.D. Va. 2000)).

3

The United States argues that service of the Writ upon GovLog's attorney was proper in this instance because GovLog is a party to the underlying action, and "[i]t is well settled that garnishment is an ancillary proceeding growing out of, and dependent upon, another original or primary action or proceeding." Opp. 5 (quotation marks omitted) (quoting *Smith v. Lorillard, Inc.*, 945 F.2d 745, 746 (4th Cir. 1991)). Accordingly, the issuance of the Writ marks only the beginning of a new "phase of the underlying case." Opp. 6. And because GovLog is represented by counsel in the underlying case, service of the Writ in this instance is governed by Federal Rule of Civil Procedure 5(b)(1), which holds that "[i]f a party is represented by an attorney, service under the rule must be made on the attorney unless the court orders service on the party." *See* Opp. 4.

GovLog counters that while "[t]here is no dispute that Rule 5 applies to ongoing or ancillary proceedings . . . this garnishment proceeding is not ongoing or ancillary *vis a vis GovLog*." Rep. 1. GovLog asserts that because the Writ issued to GovLog as a third-party garnishee rather than as a judgment-debtor, GovLog is "being sued in a different capacity than it was in the successor liability suit," and so "the proceeding vis a vis GovLog is not a mere continuation of the original suit," but a new lawsuit altogether. *Id.* at 2. Accordingly, GovLog contends that the United States is required to effectuate service upon GovLog as if it were initiating a new civil proceeding instead of serving the Writ on GovLog's counsel as a filing in the underlying case.

The question raised here—whether a writ of garnishment may be served under Rule 5 on the attorney of a third-party garnishee who has appeared as a party in the underlying action—is apparently a matter of first impression. Such a writ typically issues to a true third party, such as a judgment debtor's bank, which had no involvement in the underlying action. Where a garnishee

4

has not appeared or participated in litigation prior to receiving a writ of garnishment, both parties agree that service under Rule 5 is improper.

The text of the FDCPA, however, does not preclude service of a third-party writ of garnishment under Rule 5; the law states only that service must be accomplished "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 3004(a). Indeed, GovLog concedes that service of a writ of garnishment under Rule 5 is appropriate as to judgment debtors, as opposed to third-party garnishees. *See* Rep. 1-2; *see also N.L.R.B. v. E.D.P. Med. Comp. Sys., Inc.*, 6 F.3d 951, 957 (2d Cir. 1993). GovLog's argument hinges, therefore, on its contention that service upon it as a third-party garnishee under Rule 5 is improper because a third-party garnishee is "sued in a different capacity." Rep. 2.

GovLog, however, does not explain how the issuance of the Writ initiated a new lawsuit. The Writ issued under the caption of the underlying case, and appears on the case's docket. GovLog does not contend that either is improper. Indeed, the Court routinely handles third-party garnishment under the headings of ongoing civil actions. *See, e.g.*, Dkt. Nos. 90-135, *1350 I Street Associates Limited Partnership v. Kowbabi et al.*, No. 1:14-cv-46; Dkt. Nos. 40-83, *U.S. Bank National Association v. Leesburg Pizza Buffet, LLC et al.*, No. 1:12-cv-01514. On its face, the Writ exists as part of a larger civil proceeding.

Nor is there any apparent basis for treating the writ as a separate lawsuit in any abstract legal sense. As the Fourth Circuit has observed, "[i]t is well-settled that garnishment is an ancillary proceeding growing out of, and dependent upon, another original or primary action or proceeding." *Smith v. Lorillard, Inc.*, 945 F.2d 745, 746 (4th Cir. 1991) (quotation marks omitted). The Supreme Court has characterized garnishment proceedings as ancillary in nature even where "third parties" are concerned. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996). The

"usual understanding of garnishment" holds that it is a procedural mechanism for collecting judgments already rendered, not a freestanding legal action that "creates rights and liabilities where none existed before." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 840 n.10 (1988) (quotation marks omitted). Such is the case here; the Writ does not seek to establish GovLog's legal liability or affect any assets belonging to GovLog, but merely works to secure assets belonging to Gosselin to which the United States is entitled under the judgment already rendered. In no sense does the Writ initiate a new, independent lawsuit or other proceeding.

Furthermore, the Court finds unpersuasive GovLog's claim that the Court must focus on the "capacity" in which the Writ issued as to GovLog to determine the proper manner of service. In advancing this claim, GovLog relies first on *Ace Investors v. Rubin*, 494 Fed. App'x 856, 859 (10th Cir. 2012), for the proposition that the "court must focus on the particular capacity in which a party is being sued in determining whether it has personal jurisdiction." But as indicated by the quoted passage, *Ace Investors* concerns personal jurisdiction rather than the distinct issue of sufficiency of service, and so provides little support for GovLog's argument. Moreover, and as discussed more fully below, the holding of *Ace Investors* rests upon principles of the law of trusts that are not applicable or analogous to the present situation.

The remaining cases GovLog cites similarly fail to address the issue before the Court in that each concerns improper service under Rule 5 in what was clearly a separate, freestanding action rather than an ancillary proceeding. For example, in *United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306, 1309 (10th Cir. 1994), the government attempted to serve a complaint in a civil forfeiture action on a criminal defense attorney who represented the defendant in the underlying criminal trial. The criminal prosecution and the civil forfeiture action

were discrete cases, involving the filing of separate complaints initiating distinct lawsuits under different captions, each seeking different relief and governed by different legal standards. Indeed, the cases involved different defendants, as the civil forfeiture action was commenced *in rem* against real property in a neighboring state. *See id*. Similarly, in *United States v. Ziegler Bolt & Parts Co*., 883 F. Supp. 740 (Ct. Int'l Trade 1995), the United States attempted service of a complaint in a civil action upon an attorney who represented the defendant in a related administrative proceeding. As the court explained in that case, the administrative action was "separate and distinct from th[e] civil action," and was "commenced under [different] rules and standards" before a different adjudicatory body. *Id*. at 749. And in *Santos v. State Farm Fire & Casualty Co*., 902 F.2d 1092, 1093 (2d Cir. 1990), the plaintiff attempted to serve a complaint upon attorneys who had represented the defendant during a series of depositions mandated by the plaintiff's insurance policy. The attorneys in *Santos* never entered an appearance on behalf of the defendant in any litigation that would implicate Rule 5.

In short, none of the cases GovLogs cites support the proposition that service with respect to different filings within a single civil matter must be effectuated differently depending on the capacity in which a litigant is served. Moreover, this position is inconsistent with other aspects of federal civil procedure. For example, when a defendant asserts a counterclaim against a plaintiff, the capacity of the latter becomes that of a counterclaim-defendant. GovLog's position would require an answer containing a counterclaim be served pursuant to Rule 4 on the plaintiff itself rather than on the plaintiff's attorney pursuant to Rule 5. But that has never been the case. *See Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962) ("Service of a pleading containing a counterclaim may be made upon the opponent's attorney"); *see also* 6 Wright & Miller, *Federal Practice and Procedure* § 1407 (3d ed. 2002); *Luyster v. Textron, Inc.*, 266

F.R.D. 54, 65 (S.D.N.Y. 2010) (rejecting the argument that a crossclaim was required to be served as a third-party complaint under Rule 4 rather than under Rule 5 because the party making the argument had appeared in the case and was represented by counsel).

Rule 5 has been given an "extremely broad" interpretation, *Private Bank & Trust Co. v. Duncan*, No. 09-cv-14734, 2010 WL 1417820, at *1 (E.D. Mich. Mar. 8, 2010), *report and recommendation adopted*, No. 09-cv-14734, 2010 WL 1417819 (E.D. Mich. Apr. 5, 2010), encompassing "virtually every written communication in an action." 4B Wright & Miller, *Federal Practice and Procedure* § 1143 (4th ed. 2008). Its language is mandatory, requiring service upon a party's attorney where a party is represented. GovLog does not contest that the Writ properly issued under the heading of this case, nor that it has appeared in this case and is represented by counsel. Accordingly, service of the Writ under Federal Rule of Civil Procedure 5 upon GovLog's attorney was effective, complying with the FDCPA's requirement that a writ "be served in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 3004(a).

**B. Personal Jurisdiction**

GovLog contends that the Court lacks personal jurisdiction over GovLog for purposes of the Writ because GovLog is headquartered in Belgium and has limited contacts with the United States. Mem. in Supp. of Mot. 10-20. But as the United States points out, "[a] personal jurisdiction plea not raised by a preliminary Rule 12 motion or asserted in a party's first responsive pleading is forever waived." *Rux v. Republic of Sudan*, No. 2:04-cv-428, 2005 WL 2086202, at *13 (E.D. Va. Aug. 26, 2005). GovLog has litigated this case for several years and has not raised the issue of personal jurisdiction until now. Accordingly, the United States asserts that the defense has been waived.

GovLog again counters that "[p]ersonal jurisdiction must be established anew when a party is being sued in a different capacity" and "GovLog is not here being pursued as an alleged successor-liabil[i]ty *defendant* but as a third-party *garnishee*." Rep. 7. Having rejected this argument as to service of process, the Court declines to accept it in the context of personal jurisdiction.

In advancing its position, GovLog again relies heavily on *Ace Investors v. Rubin*, 494 Fed. App'x at 859, for the proposition that the "court must focus on the particular capacity in which a party is being sued in determining whether it has personal jurisdiction." But this case has little bearing on the present situation. In *Ace Investors*, a district court found that because it "had personal jurisdiction over [a trustee] individually . . . therefore it had jurisdiction over all of the trusts of which she is a trustee." *Id*. In reversing the lower court, the Tenth Circuit held that the lower court's personal jurisdiction over the defendant in her capacity as a trustee for one trust did not confer upon that court jurisdiction over other trusts for which the defendant served as trustee. *Id*. at 859. The Tenth Circuit's decision in *Ace Investors* is simply a straightforward application of the law of trusts, which "distinguish[es] between the representative and individual capacities of a trustee." *Id*.

The other cases to which GovLog cites similarly fail to support its claim, as they hold only that a defendant's submission to the jurisdiction of a court in one action does not carry over to another, separate case. For example, GovLog cites *51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d at 1313-14, for the proposition that a "court's exercise of personal jurisdiction over [a defendant] in [a] criminal proceeding . . . d[oes] not automatically confer jurisdiction on the court in the related civil proceeding." But as discussed above, that is not the case here. In fact, the court in *51 Pieces of Real Prop. Roswell, N.M.* ultimately held that the defendant *had*

submitted to the Court's jurisdiction when his attorney entered a general appearance and failed to timely raise a personal jurisdiction defense. *See id*. at 1314. It is this latter aspect of the case that applies more clearly in this action.

Unlike *51 Pieces of Real Prop. Roswell, N.M.* and other cases upon which GovLog relies, the present situation concerns an "ancillary proceeding growing out of, and dependent upon," *Smith*, 945 F.2d at 746, an action in which GovLog has participated for years. GovLog provides no authority that would justify treating the Writ as anything but an outgrowth of that case. Nor has GovLog given the Court any reason to ignore GovLog's failure to raise a personal jurisdiction defense before now. Accordingly, any personal jurisdiction defense GovLog might have raised is long waived.

### III.   Conclusion

For the forgoing reasons, it is hereby

ORDERED that GovLog's Motion to Quash Writ of Continuing Non-Wage Garnishment (Dkt. No. 1387) is DENIED.

ENTERED this 8th day of January, 2016.

/s/
_____
Michael S. Nachmanoff
United States Magistrate Judge

Alexandria, Virginia